[No. 4094–1–III.   Division Three.   October 30, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL R. FOLTZ, *Appellant*.

*Terry J. Bloor* and *Richard Bennett, P.S.,* for appellant.

*Curtis Ludwig, Prosecuting Attorney,* and *Ray R. Whitlow, Deputy,* for respondent.

MUNSON, J.—Michael Foltz petitioned for discretionary review of the decision of the Benton County Superior Court declining juvenile court jurisdiction. This court granted discretionary review and reversed the declination order.

Michael Foltz is a 17–year 1–month–old high school student who is charged with willing participation in his family's marijuana sales business. Along with his mother, father and adult brother, Michael Foltz allegedly grew and sold marijuana to students at Kamiaken High School until business conditions were made untenable by police action. Michael has no criminal history. He said he lived with his parents, was unmarried, and was unemployed, having once held a job at a drive–in restaurant. At a hearing to determine whether to decline juvenile jurisdiction pursuant to RCW 13.40.110,[1] the only witness called was an evaluation analyst on the Benton County Juvenile Court staff. She recommended Michael Foltz be retained in the juvenile system. Nonetheless, the court declined jurisdiction over Foltz, stating: "I think because of the seriousness of the offense, and it is a matter that has to be dealt with better than we can in juvenile court, I will decline jurisdiction."

---

[1] RCW 13.40.110 states:

"(1) The prosecutor, respondent, or the court on its own motion may, before a hearing on the information on its merits, file a motion requesting the court to transfer the respondent for adult criminal prosecution and the matter shall be set for a hearing on the question of declining jurisdiction. Unless waived by the court, the parties, and their counsel, a decline hearing shall be held where:

"(a) The respondent is sixteen or seventeen years of age and the information alleges a class A felony or an attempt to commit a class A felony; or

"(b) The respondent is seventeen years of age and the information alleges assault in the second degree, extortion in the first degree, indecent liberties, kidnaping in the second degree, rape in the second degree, or robbery in the second degree.

"(2) The court after a decline hearing may order the case transferred for adult criminal prosecution upon a finding that the declination would be in the best interest of the juvenile or the public. The court shall consider the relevant reports, facts, opinions, and arguments presented by the parties and their counsel.

"(3) When the respondent is transferred for criminal prosecution or retained for prosecution in juvenile court, the court shall set forth in writing its finding which shall be supported by relevant facts and opinions produced at the hearing."

■ The basic issue is whether the court abused its discretion in declining juvenile jurisdiction over Michael Foltz. The exercise of discretion in a juvenile declination hearing is uniquely limited. First, the court must consider eight criteria promulgated in *Kent v. United States,* 383 U.S. 541, 566–67, 16 L. Ed. 2d 84, 86 S. Ct. 1045, 1060 (1966).[2] Second, the court's exercise of discretion must be consonant with the purposes of the Juvenile Justice Act of 1977 which are, broadly, to provide for the handling of juvenile offenders through a separate and independent system providing both punishment and treatment where necessary. RCW 13.40.010(2). Third, the trial court's discretion is subject to reversal when "'the discretion has been exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable.'" *In re Harbert,* 85 Wn.2d 719, 723, 538 P.2d 1212 (1975), citing *In re Burtts,* 12 Wn. App. 564, 530 P.2d

---

[2] "The determinative factors which will be considered by the Judge in deciding whether the Juvenile Court's jurisdiction over such offenses will be waived are the following:

"1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

"2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

"3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

"4. The prosecutive merit of the complaint, i. e., whether there is evidence upon which a Grand Jury may be expected to return an indictment (to be determined by consultation with the United States Attorney).

"5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the U. S. District Court for the District of Columbia.

"6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

"7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.

"8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court."

709 (1975), citing *Friedlander v. Friedlander,* 80 Wn.2d 293, 298, 494 P.2d 208 (1972). As stated in *In re Harbert, supra* at 723–24:

> Moreover, both *Kent* [*v. United States, supra*] and *Dillenburg v. Maxwell,* 70 Wn.2d 331, 413 P.2d 940, 422 P.2d 783 (1966), recognize the necessity that a waiver order must be accompanied by a statement of the reasons for the waiver order of sufficient specificity to permit meaningful review.

A review of the record suggests that the trial court's determination to decline jurisdiction over Michael Foltz was clearly untenable. First, although Foltz may have committed a premeditated, serious offense against people, the offense was carried out in the context of a family business. There is no evidence whether Michael's actions were or were not heavily influenced by parental and sibling pressures. Nor did the court give any reason supporting its conclusion that this case could be dealt with more appropriately by the adult correctional institution than by the juvenile authorities. Apparently the trial court also failed to consider whether it was desirable to consolidate Michael's criminal trial with that of his codefendants.[3] This criteria must be considered under *Kent v. United States, supra.*

The only witness to testify at the declination hearing found Michael to be lacking in sophistication and maturity. Although the trial judge is the ultimate arbiter of the weight of evidence, there is no evidence to the contrary in the record. Likewise, there is no evidence in the record to indicate any previous criminal history besides two arrests which had been brought to the attention of the juvenile authorities who had declined court action. We finally note that the trial court based its decision upon its concern for the protection of the public. The only evidence before the court indicated Michael could be incarcerated for up to 3 1/2 years (until age 21) by the juvenile authorities. The

---

[3]The prosecution advised that the father and brother pleaded guilty; the case against the mother was dismissed.

judge was aware that a class C felony, with which Michael was charged, carried a maximum penalty of 5 years' imprisonment. RCW 9A.20.020(1)(c). The minimum sentence would likely be less than that. We do not believe that this difference can justify declining juvenile jurisdiction. The very purpose of the juvenile system is to provide an alternative to incarceration in adult correctional facilities. The difference in maximum sentences between the juvenile and adult systems would be minimal, so the public would be adequately protected under the Juvenile Justice Act of 1977. In short, we conclude this record is insufficient to support a declination of juvenile jurisdiction. Perhaps there is more evidence, but it is not in the record. Nor has the trial court provided a "statement of the reasons . . .' of sufficient specificity to permit meaningful review", required under *In re Harbert, supra* at 724.

The order declining jurisdiction is reversed.

GREEN, C.J., and ROE, J., concur.