[No. 53189-7.   En Banc.   September 24, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. TIMOTHY LELAND SCHAAF, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. MATTHEW GUNNER WEBB, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. EDDIE EDWARD LONEY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. MARK A. McNEELY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. TREVOR ANDREW DIXON, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. SCOTT C. BOLTON, *Appellant*.

*Anna–Mari Sarkanen, Scott J. Engelhard,* and *Neil M. Fox* of *Washington Appellate Defender Association; Janet Ainsworth* of *Seattle–King County Public Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney, Greg Hubbard, Assistant Chief Deputy,* and *Jeanne E. Tweten, Deputy,* for respondent.

ANDERSEN, J.—

## INTRODUCTION

The main issue in this case is not a new one to this court. In at least two previous opinions, we have extensively discussed the issue and have concluded that juvenile offenders need not be afforded jury trials. *See State v. Lawley,* 91 Wn.2d 654, 591 P.2d 772 (1979); *Estes v. Hopp,* 73 Wn.2d 263, 438 P.2d 205 (1968). Appellants now raise the same issue, but in a somewhat different light. In more than 200 pages of briefs, the six appellants in this case strenuously argue that recent developments in the law mandate granting juvenile offenders jury trials.

While we recognize the importance of the right to trial by jury, we also recognize the realities of life, and the enormous impact that jury trials would have on the juvenile justice system. We question whether the system, as presently structured, could even begin to absorb jury trials in juvenile cases without a restructuring of the entire legal system.

We are also well aware, however, that such practical realities are not determinative of the issue before us. It is our obligation to see to it that the state and federal constitutions are complied with, and that the appellants are accorded their full rights under the law. Because of the

importance of this issue to juvenile offenders as well as the state, we deem it appropriate to deal with the numerous arguments raised by appellants in some detail.

## FACTS OF CASE

The six defendants herein were charged and tried as juveniles. Timothy Schaaf and Matthew Webb were charged with indecent liberties, Eddie Loney with robbery in the first degree, Mark McNeely with kidnapping in the second degree and possession of stolen property in the second degree and Trevor Dixon with theft in the second degree. Scott Bolton was charged with possessing liquor, violating the Uniform Controlled Substances Act and simple assault; the first charge was dismissed at the factfinding hearing. Two of the juveniles filed pretrial motions requesting jury trials. The trial court denied the motions.

Each juvenile presented evidence on his own behalf; each was found guilty of the offenses charged. All six juveniles appealed, claiming that they were entitled to a jury trial under the state and federal constitutions.[1] The six appeals were consolidated and this court accepted certification from the Court of Appeals.[2]

## ISSUES

ISSUE ONE. Do recent developments in Washington law require granting juvenile offenders the right to a jury trial?

ISSUE TWO. Does denying juveniles the right to a jury trial violate the equal protection provisions of the state and federal constitutions?

## DECISION

ISSUE ONE.

CONCLUSION. Juvenile proceedings remain rehabilitative in nature and distinguishable from adult criminal prosecutions. Thus, no right to trial by jury attaches.

---

[1] *See* RAP 2.5(a).

[2] RCW 2.06.030(d).

The sixth amendment to the United States Constitution provides that "[i]n all *criminal prosecutions,* the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ." (Italics ours.) Similarly, article 1, section 22 of the Washington State Constitution provides that "[i]n *criminal prosecutions* the accused shall have the right . . . to have a speedy public trial by an impartial jury . . ." (Italics ours.)

This court and the Legislature have previously declined to recognize juvenile proceedings as criminal prosecutions that entitle an accused to a jury trial. In 1968, we rejected a challenge to former RCW 13.04.030, which then denied juvenile offenders a jury trial.[3] In ruling that juveniles deserve basic due process protections, we pointed out that the United States Supreme Court has not held that those protections include a jury trial.[4] We concluded that while juvenile proceedings had to comply with "rules of fairness and basic procedural rights", such compliance was possible without the formality of a jury trial. "One of the substantial benefits of the juvenile process is a private, informal hearing conducted outside the presence of a jury."[5]

Then in 1979 we upheld RCW 13.04.021(2), which provides that juvenile court cases shall be tried without a jury.[6] In *Lawley,* appellants charged that the Juvenile Justice Act of 1977 (JJA) had so altered the law's focus from treating and rehabilitating juveniles to punishing them that juvenile proceedings had become criminal prosecutions. A majority of the court disagreed, and cited the United States Supreme Court's conclusion that juvenile court jury trials

---

[3]*See Estes v. Hopp,* 73 Wn.2d 263, 438 P.2d 205 (1968).

[4]*Estes,* at 266–67, citing *In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967).

[5]*Estes,* at 268.

[6]*State v. Lawley,* 91 Wn.2d 654, 591 P.2d 772 (1979).

are not a constitutional requirement.[7] While the JJA widened the juvenile system's earlier focus on a juvenile's individual needs and problems to include his or her prior criminal activity, the act did not make juvenile proceedings so like an adult criminal prosecution that a jury trial was constitutionally required.[8]

Defendants now claim, however, that recent developments in Washington law do subject juveniles to criminal prosecution. They argue that juveniles are now accused of and held accountable for criminal behavior and, therefore, should be entitled to jury trials under *Pasco v. Mace,* 98 Wn.2d 87, 100, 653 P.2d 618 (1982), which held that "[a]s for those offenses which carry a criminal stigma and particularly those for which a possible term of imprisonment is prescribed, the constitution requires that a jury trial be afforded unless waived." As support for their claim, defendants point first to several sections of the JJA.

RCW 13.40.020(11) defines "juvenile offender" as any juvenile found by the juvenile court to have committed an offense. An offense is "an act designated a violation *or a crime* if committed by an adult under the law of this state . . ." (Italics ours.)[9] Furthermore, two of the JJA's purposes are to "[m]ake the juvenile offender accountable for his or her *criminal behavior* " and to "[p]rovide for punishment commensurate with the age, *crime, and criminal history* of the juvenile offender". (Italics ours.)[10] The *Lawley* majority acknowledged these purposes as placing a new emphasis on a juvenile's criminal behavior,[11] but defendants believe that this emphasis merits closer scrutiny in

---

[7]*See Lawley,* at 658, citing *McKeiver v. Pennsylvania,* 403 U.S. 528, 545, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971).

[8]*Lawley,* at 659.

[9]RCW 13.40.020(15) (part).

[10]RCW 13.40.010(2)(c), (d).

[11]*Lawley,* at 656.

light of recent cases stressing juvenile accountability for such behavior.

In one of those cases, a defendant argued that the Thirteenth Amendment prohibits slavery or involuntary servitude except as punishment for crime, and that a juvenile therefore could not be sentenced to restitution or community service because juvenile offenses are not crimes.[12] The Court of Appeals noted that while there is no right to a jury trial in juvenile proceedings, the law guarantees many of the same due process rights to juveniles and adults. "Given these similarities with the adult criminal justice system, we hold that the juvenile disposition order did constitute 'punishment for crime' sufficient to fall within the constitutional exception to involuntary servitude."[13]

This court similarly found juveniles accountable for criminal behavior in *State v. Bird*, 95 Wn.2d 83, 622 P.2d 1262 (1980). At issue was whether RCW 9.92.060, which grants courts the authority to suspend a criminal sentence, applies to juveniles. The State argued that the statute applies only to those convicted of a crime, and that a juvenile offense is not a crime.[14] A majority of the court found juvenile offenses sufficiently analogous to crimes to allow trial courts to suspend juvenile sentences under RCW 9.92-.060. As support, the majority pointed to the Court of Appeals holding that the compromise of misdemeanors statute, RCW 10.22, applies to juvenile offenses as well as adult misdemeanors.[15]

The fact that juveniles are accountable for criminal behavior does not erase the differences between adult and juvenile accountability. The penalty, rather than the criminal act committed, is the factor that distinguishes the juve-

---

[12]*In re Erickson*, 24 Wn. App. 808, 809, 604 P.2d 513 (1979).

[13]*Erickson*, at 810.

[14]*State v. Bird*, 95 Wn.2d 83, 88, 622 P.2d 1262 (1980).

[15]*Bird*, at 88, citing *State v. Norton*, 25 Wn. App. 377, 606 P.2d 714 (1980).

nile code from the adult criminal justice system.[16] Under the juvenile code, a court order adjudging a child delinquent or dependent "shall in no case be deemed a conviction of crime."[17] We have interpreted this provision to mean that a juvenile cannot be convicted of a felony. "[A] juvenile has not committed a crime, including a felony, when he has committed an offense, 'an act designated as a crime *if committed by an adult.*'"[18]

Important distinctions result from being accused and convicted of a crime as opposed to an offense. A juvenile may be eligible for a diversion agreement in lieu of prosecution, and if prosecuted and found guilty will normally be sent to a juvenile detention facility.[19] Indeed, the purpose of the juvenile system is to provide an alternative to incarceration in adult correctional facilities.[20] As the Court of Appeals has stated:

> Although juveniles will be held accountable for their behavior, juvenile courts are vested with broad powers to provide any necessary treatment, guidance, or rehabilitation for juvenile offenders. The procedures are not as punitive as are adult criminal proceedings.

*State v. Holland,* 30 Wn. App. 366, 373, 635 P.2d 142 (1981), *aff'd,* 98 Wn.2d 507, 656 P.2d 1056 (1983). In short, under the present state of the law no amount of analogizing between adult and juvenile offenders serves to make the two classes equally accountable for their criminal actions.

The second point raised to show that juveniles are subject to criminal prosecution is the juvenile justice system's new focus on punishment. We recently observed that the juvenile system is somewhat akin to a criminal system

---

[16]*See Bird,* at 91 (Dolliver, J., dissenting).

[17]RCW 13.04.240.

[18]*In re Frederick,* 93 Wn.2d 28, 30, 604 P.2d 953 (1980).

[19]RCW 13.40.080; RCW 13.04.116.

[20]*State v. Foltz,* 27 Wn. App. 554, 558, 619 P.2d 702 (1980).

because of its emphasis on punishment.[21] Juveniles thus are entitled to use the infancy defense in RCW 9A.04.050. "Being a criminal defense, RCW 9A.04.050 should be available to juvenile proceedings that are criminal in nature."[22] The juvenile system's similarity to a criminal system also is allegedly shown by its failure to guarantee treatment. One of the JJA's purposes is to "[p]rovide for a clear policy to determine what types of offenders shall receive punishment, treatment, or both, . . ."[23] Defendants point to a report produced by the Washington State Juvenile Disposition Standards Commission that elaborates on this statutory provision.[24] They charge that statements such as "[t]he community and the juvenile justice system should be held accountable for being fair and consistent in its punishment of youthful offenders" show the JJA's preoccupation with punishment.[25] Defendants also point out that juvenile offenders must now pay a monetary penalty under RCW 7.68.035(7) of the crime victims compensation act.[26] The most important piece of evidence showing the new emphasis on punishment, however, is the possibility of transferring a juvenile offender to the Department of Corrections and adult incarceration.[27]

In *State v. Lawley*, 91 Wn.2d 654, 591 P.2d 771 (1979), the majority of this court considered similar arguments and concluded that in enacting the JJA, the Legislature had done more than merely mandate punishment for

---

[21]*State v. Q.D.*, 102 Wn.2d 19, 23, 685 P.2d 557 (1984).

[22]*Q.D.*, at 23.

[23]RCW 13.40.010(2)(j) (part).

[24]Washington State Juvenile Disposition Standards Comm'n, *Washington State Juvenile Disposition Standards Philosophy and Guide* (July 1984).

[25]*Juvenile Disposition Standards*, at 11.

[26]*State v. Sargent*, 36 Wn. App. 463, 467, 674 P.2d 1268 (1984).

[27]RCW 13.40.280.

the juvenile offender.[28] Recently we agreed that "it would be a mistake to assume that the new legislation has turned completely from the ideal of rehabilitating juvenile offenders."[29] The purposes and policies of the JJA are more complex than those of the adult criminal justice system, as expressed by the Sentencing Reform Act of 1981.[30] The policies of the JJA are twofold: to establish a system of having primary responsibility for, being accountable for, and responding to the needs of youthful offenders; and to hold juveniles accountable for their offenses.[31] Nowhere in the adult criminal system is there a policy of responding to the needs of offenders or of rehabilitating them. Rather, punishment is the paramount purpose of the adult sentencing system.[32]

> Thus, while the JJA shares with the adult system the purposes of rendering a child accountable for his acts, punishing him and exacting retribution from him, such purposes are tempered by, and in some cases must give way to, purposes of responding to the needs of the child. . . . the JJA has not utterly abandoned the rehabilitative ideal which impelled the juvenile justice system for decades. It does not embrace a purely punitive or retributive philosophy. Instead, it attempts to tread an equatorial line somewhere midway between the poles of rehabilitation and retribution.

*State v. Rice*, 98 Wn.2d 384, 393, 655 P.2d 1145 (1982).

Defendants also claim that juvenile proceedings constitute criminal prosecutions because of the possible use of prior juvenile convictions to (1) send a juvenile to adult court for prosecution and (2) to increase a defendant's sentence in adult court. It is true that a juvenile court may

---

[28]*State v. Lawley*, 91 Wn.2d 654, 657, 591 P.2d 772 (1979).

[29]*State v. Rice*, 98 Wn.2d 384, 391, 655 P.2d 1145 (1982).

[30]*Rice*, at 392.

[31]*Rice*, at 392.

[32]*Rice*, at 392–93.

consider a juvenile's record in deciding whether to waive jurisdiction.[33] Several other factors also must be considered during a decline hearing, including the seriousness of the alleged offense, whether the offense was committed in an aggressive, violent, premeditated or willful manner, whether the offense was against persons or property, the prosecutive merit of the complaint, the desirability of trial and disposition of the entire offense in one court, the sophistication and maturity of the juvenile, and the prospects of protecting the public and rehabilitating the juvenile.[34] Once a juvenile court declines jurisdiction over a juvenile, he or she may never again be tried in juvenile court.[35] It is clear, however, that a decision to waive juvenile court jurisdiction is not made lightly, and occurs only when a juvenile is charged with an egregious offense.

Juvenile offenses also may be considered by an adult court for sentencing purposes. Under the sentencing Reform Act of 1981, juvenile convictions are included in a defendant's criminal history if (1) the juvenile offense was a felony; (2) the defendant was 15 or older when the juvenile offense was committed; and (3) with respect to prior juvenile class B and C felonies, the defendant was less than 23 when the adult offense was committed.[36] The "offender score" statute shows that juvenile felony convictions meeting these criteria are used to enhance adult sentences.[37]

The State argues that the SRA definition of criminal history as applied to juvenile offenses is narrow, while defendants contend that most people arrested for serious

---

[33]*State v. Holland,* 98 Wn.2d 507, 515–16, 656 P.2d 1056 (1983); *Foltz,* at 556.

[34]*Holland,* at 515 n.2; *Foltz,* at 556 n.2.

[35]*State v. Mitchell,* 32 Wn. App. 499, 500, 648 P.2d 456 (1982). *See also* RCW 13.40.020(10).

[36]RCW 9.94A.030(8)(b).

[37]*See* RCW 9.94A.360.

crimes are from 16 to 23 years of age.[38] It cannot be denied, however, that use of juvenile offenses for sentencing purposes is more limited under the SRA than before the act was passed.[39] This court did not qualify its statement that a trial judge may consider juvenile arrest records in sentencing hearings in *State v. Dainard,* 85 Wn.2d 624, 628, 537 P.2d 760 (1975).[40]

According to defendants, another element of the criminal prosecution definition is the level of judicial or procedural formality an accused faces. They argue that recent amendments to RCW 13.40.140(8) have made the juvenile proceeding much like a formal adult prosecution. In 1981, the Legislature added wording to specify that a juvenile's right against self–incrimination is the same as an adult's right. In addition, illegally seized evidence is inadmissible in juvenile court "if the evidence would be inadmissible in an adult criminal proceeding", and a juvenile's extrajudicial statement is insufficient to support a finding of guilt unless evidence of a corpus delicti is established "in the same manner as required in an adult criminal proceeding."[41]

While the informal, discretionary system that once existed in juvenile proceedings has been modified substantially, some degree of flexibility and informality persists in juvenile proceedings. Juveniles are not automatically fingerprinted and photographed.[42] Diversion agreements are possible in lieu of prosecution.[43] Mitigating factors are to

---

[38]Petersilia, *Juvenile Record Use in Adult Criminal Proceedings: A Survey of Prosecutors,* 72 J. Crim. L. & Criminology 1746 (1981).

[39]*See State v. Dainard,* 85 Wn.2d 624, 628, 537 P.2d 760 (1975); *State v. Hernandez,* 20 Wn. App. 225, 228, 581 P.2d 157 (1978).

[40]*See also State v. Holland,* 30 Wn. App. 366, 377, 635 P.2d 142 (1981), *aff'd,* 98 Wn.2d 507, 656 P.2d 1056 (1983).

[41]*See* Laws of 1981, ch. 299, § 11(8), p. 1350.

[42]RCW 13.04.130.

[43]RCW 13.40.080(1).

be considered at disposition hearings.[44] Limitations are placed on the use of juvenile records and the length of time they will be made public.[45] Though juveniles are accorded many of the procedural rights granted adult criminal suspects, juvenile proceedings do not yet so resemble adult proceedings that a jury trial is required.

Defendants' final argument is that Washington cases after *Lawley* have more broadly interpreted the state constitutional right to a jury trial. The United States Supreme Court declined to require jury trials for juveniles under the federal constitution in *McKeiver v. Pennsylvania,* 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971), but added that the states were free to install a juvenile justice system embracing jury trials. "That, however, is the State's privilege and not its obligation."[46]

■ In *State v. Gunwall,* 106 Wn.2d 54, 61–62, 720 P.2d 808 (1986), we recently enumerated several criteria to be used in determining whether our state constitution extends broader rights to our citizens than does the federal constitution.

The first consideration is the textual language of the state constitution.[47] In addition to article 1, section 22, which guarantees a jury trial in criminal prosecutions, article 1, section 21 of the Washington State Constitution provides that the "right of trial by jury shall remain inviolate".

The second *Gunwall* criterion is a comparison of the texts of parallel provisions of the state and federal constitutions.[48] The Sixth Amendment and article 1, section 22 are comparable, but article, 1, section 21 has no

---

[44]RCW 13.40.150(3)(h).

[45]RCW 13.50.050.

[46]*McKeiver v. Pennsylvania,* 403 U.S. 528, 547, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971).

[47]*State v. Gunwall,* 106 Wn.2d 54, 65, 720 P.2d 808 (1986).

[48]*Gunwall,* at 65.

federal counterpart. Defendants contend that article 1, section 21 should be read as an expression by the framers that the state right to a jury trial is broader than the federal right. The provision was so interpreted in *Pasco,* where the court held that petty criminal offenses require a jury trial under the state constitution, even though there is no such requirement under the federal constitution.[49]

The next *Gunwall* consideration is the state constitutional and common law history relating to the provisions at issue.[50] This court has said that article 1, section 21 preserves the right to a jury trial as that right existed at common law in the territory when section 21 was adopted.[51] Based thereon, defendants claim that section 21 guarantees them jury trials since juveniles charged with criminal acts would have been guaranteed a jury trial at the time this state was a territory.[52]

This latter argument, however, overlooks the salient fact that territorial lawmakers did not anticipate the enactment of a separate juvenile justice system. Washington did not create a separate juvenile court system until 1905, and did not pass comprehensive legislation concerning the juvenile justice system until 1913.[53] It does no violence to our state's common law history to give credence to a 70–year-old legal system that was nonexistent in our territorial days.

Indeed, we take note of that 70–year history in considering the next *Gunwall* criterion: preexisting state law.[54] In

---

[49]*See Pasco v. Mace,* 98 Wn.2d 87, 95–97, 653 P.2d 618 (1982).

[50]*Gunwall,* at 66.

[51]*Pasco,* at 96; *In re Marriage of Firchau,* 88 Wn.2d 109, 114, 558 P.2d 194 (1977).

[52]*See* Code of 1881, ch. 87, § 1078.

[53]Becker, *Washington State's New Juvenile Code: An Introduction,* 14 Gonz. L. Rev. 289, 290 (1979).

[54]*Gunwall,* at 66.

reference to section 21, this court has observed that

> under the concept embodied in the constitution of Washington, enacted as it was in light of the laws of the territory existing at that time, no offense can be deemed so petty as to warrant denying a jury *if it constitutes a crime.*

(Italics ours.) *Pasco v. Mace,* 98 Wn.2d 87, 99, 653 P.2d 618 (1982).

For more than 70 years, this state has been trying to avoid accusing and convicting juveniles of crimes. While the Juvenile Justice Act of 1977 placed more emphasis on a juvenile's criminal activity than did its 1913 counterpart, we observed in *Lawley* that this new emphasis may "[do] as much to rehabilitate, correct and direct an errant youth as does the prior philosophy of focusing upon the particular characteristics of the individual juvenile."[55] Even though the Legislature changed the methods of dealing with juvenile offenders, it did not thereby convert juvenile proceedings "into a criminal offense atmosphere totally comparable to an adult criminal offense scenario."[56] We reiterated that the JJA has not turned completely from the ideal of rehabilitating juvenile offenders in *State v. Rice,* 98 Wn.2d 384, 655 P.2d 1145 (1982). "The new legislation clearly does not set up a rigidly punitive system which mirrors in every respect the adult criminal justice system."[57] To interpret section 21 as defendants wish would mean overlooking these statements and the attempts of the juvenile justice system to distinguish juvenile offenders from their adult counterparts. We are not impressed by the implicit suggestion that the state of Washington should regress to territorial days and adopt a system where juveniles are treated like adult criminals and are afforded no special protections.

The fifth *Gunwall* factor is the structural difference

---

[55]*State v. Lawley,* 91 Wn.2d 654, 656–57, 591 P.2d 772 (1979).

[56]*Lawley,* at 659.

[57]*State v. Rice,* 98 Wn.2d 384, 391, 655 P.2d 1145 (1982).

between the federal and state constitutions.[58] The federal constitution is a grant of limited powers, while the state constitution limits the otherwise plenary power of the state.[59] Defendants argue that the explicit affirmation of rights in the Washington Constitution should be seen as a guaranty of those rights.[60] Even assuming this to be so, it does not follow that section 21 applies to juvenile proceedings.

The final criterion in assessing whether broader state rights should be granted is whether a matter is of state interest or local concern.[61] There is no need for national uniformity on this issue, as the United States Supreme Court has made clear.[62]

After full consideration of all aspects of the matter, new and previously raised, we conclude that we should remain with the majority of states which deny jury trials in juvenile cases.[63] Our examination of the *Gunwall* factors leaves us convinced that juvenile offenders are not entitled to jury trials under our state constitution. This is particularly true with respect to the preexisting state law factor, and the statutory insistence of long standing that there be a unique juvenile justice system in this state. Weighed with our consideration of this long–standing precedent is our previous discussion of the current state of the law governing juvenile offenders, under which juvenile proceedings are still distinguishable from adult criminal prosecution, both in terms of procedure and result. We conclude that jury trials are not necessary to fully protect a juvenile offender's

---

[58]*Gunwall,* at 66.

[59]*Gunwall,* at 66–67.

[60]*See Gunwall,* at 62.

[61]*Gunwall,* at 67.

[62]*McKeiver,* at 547.

[63]*See McKeiver,* at 548–49.

rights.

ISSUE TWO.

CONCLUSION. The statutory denial of jury trials in juvenile justice proceedings is rationally related to the State's desire to maintain the unique nature of the juvenile justice system.

The equal protection clauses of the Fourteenth Amendment and Washington Const. art. 1, § 12 require that "'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.'"[64] Traditionally, two tests have been used to determine whether this right to equal treatment has been violated. Under the rational relationship test, a law is subjected to minimal scrutiny and will be upheld "'unless it rests on grounds wholly irrelevant to the achievement of a legitimate state objective.'"[65] Under the strict scrutiny test, a law may be upheld only if it is shown to be necessary to accomplish a compelling state interest.[66] The strict scrutiny test is used if an allegedly discriminatory statutory classification affects a suspect class or a fundamental right.[67] Both the United States Supreme Court and this court have recognized a third test to apply in limited circumstances. Under the "intermediate scrutiny" test, the challenged law must be seen as furthering a substantial interest of the state.[68] The Supreme Court typically applies this test where gender-

---

[64]*State v. Phelan,* 100 Wn.2d 508, 512, 671 P.2d 1212 (1983), quoting *Harmon v. McNutt,* 91 Wn.2d 126, 130, 587 P.2d 537 (1978).

[65]*Phelan,* at 512, quoting *Nielsen v. Washington State Bar Ass'n,* 90 Wn.2d 818, 820, 585 P.2d 1191 (1978).

[66]*Rice,* at 399; *Nielsen,* at 820.

[67]*Phelan,* at 512; *Rice,* at 399.

[68]*Phelan,* at 512; *Plyler v. Doe,* 457 U.S. 202, 217–18, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982).

based classifications are at issue.[69] This court applied the heightened scrutiny test when a classification affected both an important right (the right to liberty) and a semi–suspect class not accountable for its status (the poor).[70]

Defendants argue that the strict scrutiny test, or at the very least the heightened scrutiny test, applies here. They claim that close scrutiny of RCW 13.04.021(2)[71] is appropriate because juveniles are similar to a suspect class, because the right to a jury trial is fundamental, and because a jury trial protects a juvenile's right to physical liberty.

■ Suspect classifications typically are those based on race, alienage or national origin.[72] Defendants charge that juveniles are a semi–suspect class because they are politically powerless and vulnerable to mistreatment by society. In a recent opinion, Justice Marshall discussed the merits of such a charge:

> No single talisman can define those groups likely to be the target of classifications offensive to the Fourteenth Amendment and therefore warranting heightened or strict scrutiny; . . . The "political powerlessness of a group may be relevant, but that factor is neither necessary, as the gender cases demonstrate, nor sufficient, as the example of minors illustrates. Minors cannot vote and thus might be considered politically powerless to an extreme degree. Nonetheless, we see few statutes reflecting prejudice or indifference to minors, and I am not aware of any suggestion that legislation affecting them be viewed with the suspicion of heightened scrutiny. . . .
>
> . . . Statutes discriminating against the young have not been common nor need be feared because those who do vote and legislate were once themselves young, typi-

---

[69]*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440–41, 87 L. Ed. 2d 313, 105 S. Ct. 3249, 3255 (1985).

[70]*See Phelan*, at 514.

[71]"Cases in the juvenile court shall be tried without a jury." RCW 13.04-.021(2).

[72]*Cleburne*, at 440.

cally have children of their own, and certainly interact regularly with minors. Their social integration means that minors, unlike discrete and insular minorities, tend to be treated in legislative arenas with full concern and respect, despite their formal and complete exclusion from the electoral process.

(Citations omitted.) *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 472 n.24, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985) (Marshall, J., concurring in part, dissenting in part). Combined with these statements are those of the plurality opinion in *Cleburne* flatly stating that age–based classifications do not warrant heightened scrutiny.[73] In addition, before this court adopted the middle–tier test, it stated that the Legislature's differential treatment of juveniles did not create a suspect class.[74] Based on the reasoning of these opinions, we conclude that juveniles form neither a suspect nor semi–suspect class for equal protection purposes.

Strict scrutiny also applies, however, when state laws impinge on personal rights protected by the Constitution.[75] Defendants charge that the right to a jury trial, and the right to liberty a jury trial protects, are fundamental rights. This court has stressed the importance of the right to a jury: "[f]rom the earliest history of this state, the right of trial by jury has been treasured . . ."[76] The United States Supreme Court declared that "a general grant of jury trial for serious offenses is a fundamental right" in *Duncan v. Louisiana*, 391 U.S. 145, 157–58, 20 L. Ed. 2d 491, 88 S. Ct. 1444, *reh'g denied*, 392 U.S. 947, 20 L. Ed. 2d 1412, 88 S. Ct. 2270 (1968). In *McKeiver v. Pennsylvania*, 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971), however, the Court also noted that "one cannot say that in our legal system the jury is a necessary component of accurate factfind-

---

[73]*Cleburne*, at 441.

[74]*Rice*, at 399.

[75]*Cleburne*, at 440.

[76]*Pasco v. Mace*, 98 Wn.2d 87, 99, 653 P.2d 618 (1982).

ing."[77] The Court observed that even the *Duncan* opinion stated that "[w]e would not assert . . . that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury."[78] The Supreme Court cast further doubt on whether a jury trial is a fundamental right for juveniles in *Bellotti v. Baird*, 443 U.S. 622, 61 L. Ed. 2d 797, 99 S. Ct. 3035, *reh'g denied*, 444 U.S. 887, 62 L. Ed. 2d 121, 100 S. Ct. 185 (1979). There, the Court noted initially that the constitutional rights of children cannot be equated with those of adults because of the vulnerability of children, their inability to make critical decisions in an informed manner, and the importance of the parental role in child rearing.[79] While many due process rights have been accorded children because of their vulnerability, these rulings have not been made

> on the uncritical assumption that the constitutional rights of children are indistinguishable from those of adults. Indeed, our acceptance of juvenile courts distinct from the adult criminal justice system assumes that juvenile offenders constitutionally may be treated differently from adults.

*Bellotti*, at 635. More recently, the Supreme Court noted that certain basic constitutional protections enjoyed by adults accused of crimes also apply to juveniles.[80] The Court cited *McKeiver*, though, in adding that "the Constitution does not mandate elimination of all differences in

---

[77]*McKeiver v. Pennsylvania*, 403 U.S. 528, 543, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971).

[78]*McKeiver*, at 543, citing *Duncan v. Louisiana*, 391 U.S. 145, 158, 20 L. Ed. 2d 491, 88 S. Ct. 1444, *reh'g denied*, 392 U.S. 947, 20 L. Ed. 2d 1412, 88 S. Ct. 2270 (1968).

[79]*Bellotti v. Baird*, 443 U.S. 622, 634, 61 L. Ed. 2d 797, 99 S. Ct. 3035, *reh'g denied*, 444 U.S. 887, 62 L. Ed. 2d 121, 100 S. Ct. 185 (1979).

[80]*Schall v. Martin*, 467 U.S. 253, 263, 81 L. Ed. 2d 207, 104 S. Ct. 2403 (1984).

the treatment of juveniles."[81]

We thus conclude that a jury trial is not constitutionally guaranteed, and thus is not a fundamental right, from a juvenile's standpoint. Whether a jury trial's impact on liberty is sufficient to create a separate and potentially fundamental right is another issue. This court applied the strict scrutiny test in determining whether juveniles could be confined longer than the maximum allowed for adults because the issue directly affected the juvenile's right to liberty.[82] In *State v. Phelan*, 100 Wn.2d 508, 671 P.2d 1212 (1983), heightened scrutiny applied because if credit for presentence jail time were denied, a prisoner would be deprived of physical liberty.[83]

Here, the link between denying juveniles jury trials and depriving them of liberty is less direct. Some juveniles tried before a juvenile court judge will be found guilty, some will not. Whether a jury might reverse a finding of guilt in a particular case cannot be determined in the abstract. We deem it unwise to apply the heightened scrutiny test where the statute in question does not directly implicate physical liberty.

Since RCW 13.04.021(2) affects neither a suspect class nor a fundamental right, we must examine its validity according to the rational relationship test. We find support for such an examination in the *Cleburne* plurality opinion, which declared that:

> where individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, the courts have been very reluctant, as they should be in our federal system and with our respect for the separation of powers, to closely scrutinize legislative choices as to whether, how,

---

[81]*Schall*, at 263.

[82]*State v. Rice*, 98 Wn.2d 384, 399, 655 P.2d 1145 (1982).

[83]*Phelan*, at 514.

and to what extent those interests should be pursued. In such cases, the Equal Protection Clause requires only a rational means to serve a legitimate end.

*Cleburne,* at 441–42.

We conclude that the Legislature's statutory denial of jury trials to juveniles is rationally related to its desire to preserve some of the unique aspects of the juvenile court system. Juveniles do have distinguishing characteristics—age and vulnerability—relevant to interests the state has authority to implement—rehabilitating and treating—and the unique features of the juvenile court system are rationally related to furthering those interests. In 1977, the Legislature could have abandoned the juvenile court system altogether. It chose instead to restructure the system to, in its view, better serve the needs of the community and the juvenile while retaining the features of informality and individualized attention.

The absence of a jury trial remains an important example of the unique rehabilitative nature of juvenile proceedings. As long as the Legislature does not offend basic constitutional guaranties, we do not consider it appropriate to challenge the means by which it preserves such uniqueness. Since we cannot conclude that the nonjury trial for juveniles statute (RCW 13.04.021(2)) "rests on grounds wholly irrelevant to the achievement of a legitimate state objective", we conclude that it is not in violation of either state or federal equal protection guaranties.

In sum, while juvenile proceedings are similar to adult criminal prosecutions, enough distinctions still exist to justify denying juvenile offenders the right to a trial by jury. Juvenile offenders are afforded special protections under the present system, and we perceive no valid reason to jeopardize those protections by making juvenile proceedings fully akin to adult proceedings. Accordingly, we therefore uphold the constitutionality of RCW 13.04.021(2) which provides that "[c]ases in the juvenile court shall be tried without a jury."

Affirmed.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

GOODLOE, J. (dissenting)—An important issue, whether juvenile offenders are entitled to a jury trial, is once again before this court. And once again, a majority of this court concludes that no right to trial by jury attaches in juvenile criminal proceedings. I find this conclusion impossible to accept. An open–minded comparison indicates that juvenile proceedings have become akin to adult criminal proceedings; the Legislature and the courts of this State have so far departed from a "rehabilitative" model of juvenile justice as to render any differences from adult criminal justice too minor to justify the withholding of the right to a jury trial. Therefore, I must dissent.

To begin, I turn to Justice Hugh Rosellini's insightful dissent in *State v. Lawley,* 91 Wn.2d 654, 591 P.2d 772 (1979), in which the same issue was addressed. I will not restate all of Justice Rosellini's arguments, except to quote as follows:

> In these [Basic Juvenile Court Act] provisions the legislature has made it clear that it is no longer the primary aim of the juvenile justice system to attend to the welfare of the offending child, but rather to render him accountable for his acts, to punish him, and to serve society's demand for retribution. While the punishment prescribed may well be less than that imposed upon offending adults for the same offense, it nevertheless involves in the case of the respondent a loss of liberty. No longer is the child protected from the public's scrutiny of his "criminal" record (RCW 13.04.270(1)(a)). Furthermore, juvenile court hearings concerning offenses are made presumptively public (RCW 13.40.140(6)).
>
> No longer is the punishment geared to fit the needs of the child, rather it is related to the seriousness of the offense. Provision is made for consecutive sentences (RCW 13.40.180) and even community service is intended as punishment (RCW 13.40.020(2)). Thus, the system has

been converted from one which was or ostensibly was designed to protect and rehabilitate the child to one which is designed to protect society. The present act focuses upon the purposes which are generally served by adult criminal law.

*Lawley,* at 662 (Rosellini, J., dissenting). Justice Rosellini concluded that the court should hold RCW 13.04.021(2), which provides that juvenile court cases shall be tried without a jury, unconstitutional because it denies the juvenile a right which the people have declared belongs to every accused. *Lawley,* at 667 (Rosellini, J., dissenting). Subsequent developments in the law persuade me that the majority errs in continuing to conclude that juveniles are not entitled to a jury trial.

Const. art. 1, §§ 21 and 22 provide:

*The right of trial by jury shall remain inviolate,* but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.

In criminal prosecutions the accused shall have the right . . . to have a speedy public trial *by an impartial jury* of the county in which the offense is charged . . .

(Italics mine.) In *Pasco v. Mace,* 98 Wn.2d 87, 97, 653 P.2d 618 (1982), we held that our state constitutional right to trial by jury was more extensive than "that which was protected by the federal constitution when it was adopted in 1789." *Pasco,* at 99. We should not renege on this holding in the present case.

*Pasco* involved the right to a jury trial in the municipal courts. A unanimous court stated:

From the earliest history of this state, the right of trial by jury has been treasured, and this right has been protected even in courts of limited jurisdiction. . . . It is our conclusion that, under the concept embodied in the constitution of Washington, enacted as it was in light of the laws of the territory existing at that time, no offense can be deemed so petty as to warrant denying a jury if it constitutes a crime.

*Pasco,* at 99. The court concluded:

> As for those offenses which carry a criminal stigma and particularly those for which a possible term of imprisonment is prescribed, the constitution requires that a jury trial be afforded unless waived.

(Footnote omitted. Italics mine.) *Pasco,* at 100.

At present, juvenile offenses often carry a criminal stigma. The import of three recent decisions is that in necessary situations juvenile offenses will be held to constitute crimes. In *In re Erickson,* 24 Wn. App. 808, 810, 604 P.2d 513 (1979), *review denied,* 93 Wn.2d 1017 (1980), the court held that given the similarities between the juvenile and the adult criminal justice systems, a juvenile disposition order requiring payment of restitution and 50 hours of community service work "did constitute 'punishment for crime' sufficient to fall within the constitutional exception to involuntary servitude." *See* RCW 13.40.190; *see also* Laws of 1983, ch. 191, § 9; Laws of 1977, 1st Ex. Sess., ch. 291, § 73. In *State v. Bird,* 95 Wn.2d 83, 88–89, 622 P.2d 1262 (1980), we ruled that the adult suspended sentence statute (RCW 9.92.060) applied to juveniles under the Juvenile Justice Act of 1977 (JJA). We reasoned that "[j]uvenile offenses have been treated as analogous to crimes in certain situations". *Bird,* at 88.

Finally, in *State v. Q.D.,* 102 Wn.2d 19, 685 P.2d 557 (1984), we held that the infancy defense applied to juvenile adjudications. We stated:

> The juvenile justice system in recent years has evolved from parens patriae scheme to one more akin to adult criminal proceedings. The United States Supreme Court has been critical of the parens patriae scheme as failing to provide safeguards due an adult criminal defendant, while subjecting the juvenile defendant to similar stigma, and possible loss of liberty. *See In re Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1966); *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1977). This court has acknowledged Washington's departure from a strictly parens patriae scheme to a more criminal one, involving both rehabilitation and punishment. *In re Smiley,* 96 Wn.2d 950, 640 P.2d 7 (1982). Being a crimi-

nal defense, RCW 9A.04.050 should be available to juvenile proceedings that are criminal in nature.

*Q.D.*, at 23. These post–*Lawley* decisions indicate that juvenile offenses are analogous to crimes. Since they are treated as crimes, the constitutional right to a jury trial should be provided in juvenile criminal proceedings.

Moreover, the very real possibility now exists that a juvenile may serve a term of imprisonment *following a conviction for a juvenile offense. Cf. Lawley*, at 657 ("Commitment of a juvenile to an institution is still limited to juvenile facilities"). Pursuant to a statute passed in 1983, RCW 13.40.280, in certain situations a juvenile may be transferred to the Department of Corrections under the JJA. *See* Laws of 1983, ch. 191, § 22. This statute does not pertain to the juvenile tried as an adult. Therefore, under the juvenile "justice" system a juvenile offender may find himself or herself placed in adult incarceration without ever having been afforded the right to a jury trial. *See Pasco*, at 100. The bypass of a fundamental constitutional right in this manner is egregious and should not be condoned.

I do not find the arguments set forth by the majority convincing. The majority argues that a juvenile offense is not a "crime" and, therefore, a juvenile cannot be convicted of a "felony". Majority opinion, at 8. Nevertheless, juvenile offenses are often treated as crimes. Moreover, the majority acknowledges that a prior juvenile conviction, if the juvenile offense was a felony, is included in an adult defendant's criminal history under the Sentencing Reform Act of 1981 (SRA). Majority opinion, at 11; *see* RCW 9.94A-.030(8)(b), .360. These SRA statutes clearly express the Legislature's intent that juvenile offenses may be treated as felonies. Indeed, former RCW 9.94A.360(1) speaks of "juvenile felony convictions".

The majority also argues that juvenile proceedings are unlike adult criminal proceedings because of the former's greater flexibility and informality. Majority opinion, at 12. However, the distinctions offered by the majority fail to withstand scrutiny. For example, as in juvenile disposition

hearings, mitigating factors may likewise be considered in adult sentencing under the SRA. *See* RCW 9.94A.120(2), .390. Additionally, just as pretrial diversion agreements are possible in lieu of juvenile prosecution, similar alternatives to prosecution are available in adult cases. *See, e.g.,* RCW 10.05 (deferred prosecution in courts of limited jurisdiction). Of particular interest is that RCW 10.05 provides for deferred prosecution based on participation in an appropriate treatment plan. This obviously evinces a rehabilitative aspect to the adult criminal justice system despite the majority's bald assertion to the contrary. See majority opinion, at 10; *see also* RCW 9.94A.010(5). Nevertheless, the paramount goal of both systems is punishment.

Under the present juvenile justice system, juvenile offenders are held "accountable for their offenses". RCW 13.40-.010(2). The goal of the JJA is to "[p]rotect the citizenry from criminal behavior" and "[p]rovide for *punishment* commensurate with the age, crime, and criminal history of the juvenile offender". (Italics mine.) RCW 13.40.010(2)(a), (d). Restitution to the victims of crime may be required of the juvenile offender. RCW 13.40.010(2)(h); *State v. Bush,* 34 Wn. App. 121, 124, 659 P.2d 1127 (1983). A juvenile offender is subject to the crime victims compensation act, *see* RCW 7.68.035(7), and thus are subject to "penalty assessments". *State v. Sargent,* 36 Wn. App. 463, 674 P.2d 1268 (1984). Moreover, a juvenile offender potentially is subject to adult criminal prosecution because his or her criminal history can be used to catapult the juvenile *into* the adult criminal system. *State v. Holland,* 98 Wn.2d 507, 656 P.2d 1056 (1983); *see* RCW 13.40.020(10), .110. Regarding this last point, the majority posits that "a decision to waive juvenile court jurisdiction is not made lightly". Majority opinion, at 11. Nonetheless, there is no doubt that the juvenile offender under the JJA faces the possible loss of his or her liberty. I find the system described above akin to the adult criminal justice system.

The reality of the JJA is that rehabilitation no longer remains a substantial goal of the juvenile criminal justice

system. This is more than demonstrated by written guidelines set forth by the Washington State Juvenile Disposition Standards Commission, which was established by the Legislature in 1981. *See* Laws of 1981, ch. 299, § 4. RCW 13.40.027(1)(c) provides: "It is the responsibility of the commission to: . . . develop and propose to the legislature modifications of the disposition standards in accordance with RCW 13.40.030." The Commission produced the *Washington State Juvenile Disposition Standards Philosophy and Guide* (July 1984) (*Guide*). The *Guide*, at pages 9–10, provides:

> Youths found guilty of offenses should be held accountable for their illegal behavior by complying with court ordered sanctions. The more serious the youth's offense, the greater the sanction the youth should receive.
>
> . . .
> . . . Sanctions should not be based upon the youth's race, sex, economic status, *or treatment needs.*

(Italics mine.) The Commission concludes:

> Punishment, under the guise of rehabilitation, is unjust and will be perceived as such by the youth. A sentence that is geared to the treatment needs of the youth, undercuts the significance of the crime committed. The need for treatment services *should not* influence the severity of the youth's sentence or sanctions.

(Italics mine.) *Guide*, at 15.

The primary goal of the present juvenile justice system in this State is no longer rehabilitation, but rather condemnation, punishment, and deterrence. Where the State has embraced these goals for its juvenile justice system, the right to trial by jury must also be provided. *McKeiver v. Pennsylvania*, 403 U.S. 528, 553, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971) (White, J., concurring).

I am at a loss to explain the majority's decision except to postulate that it reflects the view that affording juvenile offenders their constitutional right to a jury trial would have tremendous adverse consequences for the juvenile justice system. This concern, however, cannot justify the failure to meet our obligation to see that juveniles are accorded

their full rights under the law—an obligation which I believe the majority utterly fails to meet. Therefore, I dissent.

Reconsideration denied December 3, 1987.