[No. 45782. En Banc. March 8, 1979.]

THE STATE OF WASHINGTON, *Petitioner*, v. MICHAEL A. LAWLEY, *Respondent*.

---

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael D. McKay* and *Steven S. Miller, Deputies,* for petitioner.

*Mark Leemon* of *Seattle–King County Public Defender,* for respondent.

*Don Herron, Prosecuting Attorney for Pierce County, Donald G. Meath, Deputy, Richard Blumberg,* and *Steve Scott,* amici curiae.

BRACHTENBACH, J.—The sole issue in this case is whether a juvenile charged with an offense under the Juvenile Justice Act of 1977, RCW 13.40, is constitutionally entitled to a jury trial. RCW 13.40 is part of a comprehensive revision of the juvenile justice system. RCW 13.04.021(2) provides: "Cases in the juvenile court shall be tried without a jury." We hold that there is not a constitutional right to a jury trial under our statutes and reverse the trial court which held to the contrary.

The facts are that the. 16–year–old respondent was charged, by information, with second–degree robbery. He demanded a jury trial; the trial court held that he was entitled to such a jury trial.

In *Estes v. Hopp,* 73 Wn.2d 263, 265–68, 438 P.2d 205 (1968), we held that due process did not require jury trials

under the former juvenile act. The essence of the defendant's argument is that the 1977 juvenile act has altered the law's focus from concern for treatment and rehabilitation of the juvenile to imposition of punishment according to the offense and the record of the juvenile. Therefore, defendant argues, the proceedings are in the nature of a criminal prosecution entitling the juvenile to a jury trial as part of due process under the Fourteenth Amendment coupled with the sixth amendment to the United States Constitution and article 1, section 22 of our state constitution.

A comparison of the 1977 Juvenile Justice Act with the prior juvenile law leaves no doubt that the legislature has substantially restructured the manner in which juvenile offenders are to be treated. *See New Juvenile Code* (1978) (Family Law Section, Continuing Legal Education Commission, Washington State Bar Association). However, the pivotal question is whether the juvenile proceedings are so akin to an adult criminal prosecution that the constitutional right to a jury trial is necessary. To determine that issue we must examine the general scheme of the new act and apply a controlling United States Supreme Court case.

It is true that the 1977 act does place a different emphasis upon the prior criminal activity of the juvenile. For example, it provides for the juvenile to be accountable for his or her criminal behavior, and it does mandate that there shall be punishment commensurate with the age, crime, and criminal history of the juvenile offender. RCW 13.40-.010(2)(c) and (d).

■ Standing alone these legislative declarations of purpose might seem to indicate an intent to convert the juvenile procedures into traditional adult criminal proceedings. However, there are three reasons why we believe the legislature did not intend to accuse, treat and sentence juveniles the same as adult offenders.

First, the legislature may well have determined that the accountability for criminal behavior, the prior criminal activity and punishment commensurate with age, crime and criminal history does as much to rehabilitate, correct and

direct an errant youth as does the prior philosophy of focusing upon the particular characteristics of the individual juvenile. Whether that approach, compared to the prior philosophy is potentially more effective is not for this court to decide. The legislature was dealing with a social problem, the solutions to which do not lie within any peculiar expertise of judges. The legislature has made a considered decision that this act is more appropriate than the one which has not succeeded heretofore.

Second, the legislature in fact has done more than merely mandate punishment for the juvenile offender. For example, in RCW 13.40.010(2)(f) it declares a purpose to provide necessary treatment, supervision and custody for juvenile offenders. Likewise in subdivision (j) there is specific reference to punishment, treatment or both in dealing with the juvenile. Counseling may be part of community supervision which is provided for in RCW 13.40.020(3)(d). Accused juveniles are provided their full range of constitutional rights such as the right to an attorney, to confront witnesses, the privilege against self–incrimination and suppression of evidence illegally obtained. RCW 13.40.140.

While the act does set certain determinate disposition standards, it expressly reserves to the juvenile court judge the right to alter an otherwise mandated disposition if the court finds that such disposition would impose an excessive penalty on the juvenile. RCW 13.40.020(12) and RCW 13.40.160.

Further at the disposition hearing, the court is empowered to receive and consider all relevant and material evidence including (1) recommendations from the prosecutor and counsel for the juvenile, (2) information and arguments offered by the parties and their counsel, (3) predisposition reports and (4) statements from the juvenile and his or her parent, guardian or custodian. Additionally, the court may consider both mitigating or aggravating circumstances. RCW 13.40.150.

Commitment of a juvenile to an institution is still limited to juvenile facilities established pursuant to RCW 72.05

and 72.16 through 72.20. RCW 13.40.020(9). Looking at those referenced statutes we find again emphasis upon the interest, welfare and rehabilitation of the individual child. For example, RCW 72.05.010 refers to providing certain facilities and services which will best serve the welfare of the child and society. RCW 72.05.130 refers to programs for treatment, guidance and rehabilitation. Likewise, RCW 72.19.060 establishes a policy of reformation, training and rehabilitation.

▉ Finally, a jury trial is not mandated by the United States Supreme Court's interpretation of the federal constitution. In *McKeiver v. Pennsylvania,* 403 U.S. 528, 545, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971), the court stated: "we conclude that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement." Before reaching that conclusion the court reviewed six of its prior juvenile rights cases. The court summarized its holdings in those cases and included two points at page 533 which are persuasive to us:

> Some of the constitutional requirements attendant upon the state criminal trial have equal application to that part of the state juvenile proceeding that is adjudicative in nature. Among these are the rights to appropriate notice, to counsel, to confrontation and to cross–examination, and the privilege against self–incrimination. Included, also, is the standard of proof beyond a reasonable doubt.

Those required rights are provided for in our statute. The court then made the point that:

> The Court, however, has not yet said that *all* rights constitutionally assured to an adult accused of crime also are to be enforced or made available to the juvenile in his delinquency proceeding. Indeed, the Court specifically has refrained from going that far:
>> "We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment."

(Citations omitted.) *See* Smith, *Turning Point for Juvenile Justice: Are Jury Trials Really Essential?*, 2 J. Juv. L. 1, 14 (1977); Ketcham, *McKeiver v. Pennsylvania: The Last Word on Juvenile Court Adjudications?*, 57 Cornell L. Rev. 561, 562–66 (1972).

■ In summary, the legislature has changed the philosophy and methodology of addressing the personal and societal problems of juvenile offenders, but it has not converted the procedure into a criminal offense atmosphere totally comparable to an adult criminal offense scenario. We find *McKeiver v. Pennsylvania, supra,* to be controlling as to the federal constitution and decline to adopt a more stringent rule under our state constitution. Because the Juvenile Justice Act of 1977 measures up to the "essentials of due process," jury trials are not necessary in juvenile adjudicatory proceedings.

The holding of the trial court is reversed.

UTTER, C.J., and STAFFORD, DOLLIVER, and HICKS, JJ., concur.

ROSELLINI, J. (dissenting)—The respondent was charged by information filed in Superior Court with the crime of robbery in the second degree. At his arraignment, he moved that RCW 13.04.021(2) be declared unconstitutional and that the case be decided by a jury. The Superior Court judge correctly ruled that the section is invalid as applied to the respondent. In my opinion, that conclusion was mandated by the constitutions of the United States and of this state.

Amendment 6 of the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, *by an impartial jury* of the state and district wherein the crime shall have been committed, . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for

obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

(Italics mine).

The new juvenile court act frankly recognizes the adjudication proceeding as one in which it is to be ascertained whether a crime has been committed. Punishment is to be imposed as prescribed by the statute. All of the rights enumerated in Amendment 6, save the right to trial by jury, are accorded the accused.

The Washington Constitution provides:

> The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, . . .

Const. art. 1, § 21. And in section 22 (amendment 10) of the same article, the people have declared that

> [i]n criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases: . . .

Again, all of these rights, save the right of trial by jury, is accorded under the act. *See* RCW 13.40.100, .140, .230.

The right to have a jury trial is expressly denied the juvenile under RCW 13.04.021(2).

The majority takes the position that this legislative denial is justified under the holdings of the United States Supreme Court in *McKeiver v. Pennsylvania,* 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971), and of this court in *Estes v. Hopp,* 73 Wn.2d 263, 438 P.2d 205 (1968). Both of those cases were decided under statutes substantially different from that which the legislature of this state adopted in 1977. The distinguishing character of this state's former statute, and of the Pennsylvania statute which was considered by the United States Supreme Court, was that the

focus was on the offender and the factors which brought him before the court, rather than on his offense. That principle has been abandoned in the 1977 act. The legislature, for reasons which it deemed sufficient and the validity of which I do not propose to question, has determined that the goals of society with respect to juvenile offenders are best served by a system in which the attention of the court is focused on the offense which was committed, rather than upon the child who has committed it. The goals are set forth in RCW 13.40.010. There the legislature declares that it is its intent to establish a system capable of having primary responsibility and accountability for, and responding to the needs of youthful offenders, as defined in that chapter, and that youths, in turn, be held accountable for their offenses. The purpose of the chapter is stated to be:

(a) Protect the citizenry from criminal behavior;

(b) Provide for determining whether accused juveniles have committed offenses as defined by the chapter;

(c) Make the juvenile offender accountable for his or her criminal behavior;

(d) Provide for punishment commensurate with the age, crime, and criminal history of the juvenile offender;

(e) Provide due process for juveniles alleged to have committed an offense;

(f) Provide necessary treatment, supervision, and custody for juvenile offenders;

(g) Provide for the handling of juvenile offenders by communities whenever consistent with public safety;

(h) Provide for restitution to victims of crime;

(i) Develop effective standards and goals for the operation, funding, and evaluation of all components of the juvenile justice system and related services at the state and local levels; and

(j) Provide for a clear policy to determine what types of offenders shall receive punishment, treatment, or both, and to determine the jurisdictional limitations of the courts, institutions, and community services.

Punishments are prescribed in RCW 13.40.160, and include the imposition of determinate periods of confinement in institutions of the state.

In these provisions the legislature has made it clear that it is no longer the primary aim of the juvenile justice system to attend to the welfare of the offending child, but rather to render him accountable for his acts, to punish him, and to serve society's demand for retribution. While the punishment prescribed may well be less than that imposed upon offending adults for the same offense, it nevertheless involves in the case of the respondent a loss of liberty. No longer is the child protected from the public's scrutiny of his "criminal" record (RCW 13.04.270(1)(a)). Furthermore, juvenile court hearings concerning offenses are made presumptively public (RCW 13.40.140(6)).

No longer is the punishment geared to fit the needs of the child, rather it is related to the seriousness of the offense. Provision is made for consecutive sentences (RCW 13.40.180) and even community service is intended as punishment (RCW 13.40.020(2)). Thus, the system has been converted from one which was or ostensibly was designed to protect and rehabilitate the child to one which is designed to protect society. The present act focuses upon the purposes which are generally served by adult criminal law.

This court, in *Estes v. Hopp, supra* at 265–66, said:

> Since the adoption of the first juvenile court act in 1899 in the state of Illinois, the concept of juvenile courts has been that a child who has committed a criminal offense, who is wayward, incorrigible, or ungovernable, is to be recognized as "delinquent" and subject to treatment under a system of probation and rehabilitation, rather than as a criminal. The focus is on the offender and the factors which brought him before the court, rather than on his offense.

This principle was found in the former RCW 13.04.095, which provided:

> When any child shall be found to be delinquent or dependent, within the meaning of this chapter, the court

shall make such order for the care, custody, or commitment of the child as the child's welfare in the interest of the state require[s].

Under the present code, the court is directed to consider mitigating and aggravating factors relating solely to the nature of the offense and the "criminal history" of the offender. RCW 13.40.150(2)(h)–(j). The system is one of criminal prosecution.

The Supreme Court of the United States, in *McKeiver v. Pennsylvania, supra,* found in its plurality opinion that a number of policy considerations dictated that the right of trial by jury should not be accorded in a juvenile proceeding. It was said that to impose a jury trial on the system would not remedy its defects nor greatly strengthen its fact–finding function, and that the State should be free to experiment to achieve the high promise of the juvenile court concept. Most importantly, the plurality opined that a jury trial might remake the proceeding into a fully adversary process and effectively end the idealistic prospect of an intimate, informal, protective proceeding.[1]

I do not think it is our function to decide whether a jury trial is necessary in order to correct the system's defects or whether the denial of the right to such a trial facilitates legislative handling of the problems of the juvenile court's system. It is obvious that the right which is given under the constitution to juveniles under our present law would not "*remake*" the proceeding into a fully adversary process and effectively end the idealistic prospect of an intimate, informal, protective "proceeding". This has already been done by the legislature. It is a fully adversary process and, as such, our constitution and, I believe, that of the United

---

[1]The Institute of Judicial Administration and the American Bar Association, in their joint project, *Standards for Juvenile Justice: A Summary and Analysis,* have suggested that each jurisdiction should provide by law that the respondent may demand a trial by jury in adjudication proceedings, where he has denied the allegations of the petition. It would appear that the judges and lawyers who conducted the project did not find convincing those policy arguments which guided the plurality in *McKeiver v. Pennsylvania,* 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971).

States demand that the juvenile be afforded the right to trial by jury.

Justice Brennan, concurring in the conclusion of the majority in *McKeiver v. Pennsylvania, supra,* said that the proceedings under the Pennsylvania statute were not criminal in nature. He nevertheless recognized the need for a procedure that would serve the purpose of a jury—that of fundamental fairness in fact finding. He thought that the juvenile could obtain that fairness by focusing public attention upon the conduct of his case. Justice Brennan then consistently reached the conclusion that the Pennsylvania statutes which permitted attendance of the press at juvenile hearings provided sufficient safeguards for fairness, but that the North Carolina statute, which either permitted or required exclusion of the general public from juvenile trials, did not afford adequate protection and that a jury trial was constitutionally required under such a statute. Justice Harlan concurred with the plurality on the sole ground that in his opinion Sixth Amendment rights do not apply to the states.

It seems to me that if publicity were all that was required to assure a fair trial, then juries would not be needed in any case. The people, however, have decreed that the right to a jury trial is an essential requirement of fairness, as is a public trial.

Justice Douglas wrote a dissent in which Justices Black and Marshall concurred. He recalled a dissent written by Justice Black in the case of *DeBacker v. Brainard,* 396 U.S. 28, 24 L. Ed. 2d 148, 90 S. Ct. 163 (1969), in which the latter had said that he could see no basis whatsoever for allowing certain constitutional rights contained in the Sixth Amendment to the accused juvenile and yet denying him a jury trial, a right which, as he said, is surely one of the fundamental aspects of criminal justice in the English–speaking world. Justice Douglas also quoted with approval from an opinion written by Judge DeCiantis of the Family Court of Providence, Rhode Island, in a case entitled *In the Matter of McCloud,* decided January 15, 1971. Judge

DeCiantis had concluded that the real traumatic experience of incarceration without due process is the feeling of being deprived of basic rights. He adds:

"The child who feels that he has been dealt with fairly and not merely expediently or as speedily as possible will be a better prospect for rehabilitation. Many of the children who come before the court come from broken homes, from the ghettos; they often suffer from low self-esteem; and their behavior is frequently a symptom of their own feelings of inadequacy. Traumatic experiences of denial of basic rights only accentuate the past deprivation and contribute to the problem. Thus, a general societal attitude of acceptance of the juvenile as a person entitled to the same protection as an adult may be the true beginning of the rehabilitative process."

*McKeiver v. Pennsylvania,* 403 U.S. 528, 562, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971). Justice Douglas reproduced this very impressive opinion in an appendix to his dissent. The Rhode Island judge disposed of the policy arguments which had been leveled against according juveniles the right to jury trial. That the jury trial is more cumbersome, more formal, and more expensive than a trial before a judge is one such argument. Judge DeCiantis said:

In fact the very argument of expediency, suggesting "supermarket" or "assembly-line" justice is one of the most forceful arguments in favor of granting jury trials. By granting the juvenile the right to a jury trial, we would, in fact, be protecting the accused from the judge who is under pressure to move the cases, the judge with too many cases and not enough time. It will provide a safeguard against the judge who may be prejudiced against a minority group or who may be prejudiced against the juvenile brought before him because of some past occurrence which was heard by the same judge.

There have been criticisms that juvenile court judges, because of their hearing caseload, do not carefully weigh the evidence in the adjudicatory phase of the proceedings. It is during this phase that the judge must determine whether in fact the evidence has been established beyond a reasonable doubt that the accused committed the acts alleged in the petition. Regardless of the merit of

these criticisms, they have impaired the belief of the juveniles, of the bar and of the public as to the opportunity for justice in the juvenile court. Granting the juvenile the right to demand that the facts be determined by a jury will strengthen the faith of all concerned parties in the juvenile system.

*McKeiver,* at 565–66.

The argument that to allow jury trials would cause the accumulation of a backlog of cases in juvenile court was also disposed of, the judge pointing out that in those jurisdictions in which jury trials have been permitted, either under court holdings or statutes, the actual incidence of such trials has been exceedingly low—in most cases, less than 1 percent of juvenile cases tried.

Policy arguments are interesting and no doubt a concern of the people who are responsible for the constitutions under which we function. I do not think that they should have any material bearing on our decision here. The fact is that the people have declared in both the federal and state constitutions that they hold the right of trial by jury essential to the maintenance of a system of criminal justice which punishes only those who are proven guilty beyond a reasonable doubt. The jury brings together 12 persons whose qualifications and bias have been examined by both prosecution and defense and who have been found acceptable by both; 12 persons who have had no previous exposure to the alleged facts of the case and can therefore approach the question with some detachment. Unlike the judge who has tried many cases and inevitably has acquired some settled attitudes, the jury is involved in a new experience quite different from that which its members encounter in everyday life. Admonished as they are with the solemnity of their duty, they can be expected to focus their attention upon the evidence with an interest and a curiosity that the experienced judge may find it difficult to consistently muster. The jury represents the conscience of the community, a role which a single judge may not be able to perform.

Because the people expressly and repeatedly reserved the right of jury trial to themselves, I think it ill–behooves the courts to withhold that right according to their own conceptions of efficacy. It is a right guaranteed by our fundamental documents, and one which it is our duty to protect and preserve.

RCW 13.04.021(2) denies to the juvenile a right which the people have declared belongs to every accused.

I would sustain the trial court in holding it unconstitutional.

WRIGHT and HOROWITZ, JJ., concur with ROSELLINI, J.

Reconsideration denied April 24, 1979.