IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33568-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL RILEY FRAZIER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Michael Frazier appeals from his conviction, in juvenile court, for indecent liberties by forcible compulsion. He argues that a bench trial abridged his right to a jury trial. He claims that the trial court should have considered his age before finding that he knowingly engaged in sexual contact with force. We reject Frazier's arguments and affirm his conviction.

## FACTS

At the end of eighth grade and into the succeeding summer, Michael Frazier and Mary Bartholomew dated. Mary Bartholomew is a pseudonym. The romantic relationship included hugging and kissing. They entered high school that fall. Mary ended the relationship.

On December 29, 2014, while a sophomore in high school, Michael Frazier visited his friend Stan Baker at Stan's home. Frazier was then fifteen years of age. Stan Baker is also a pseudonym. In the early evening, Frazier invited, by Snapchat, Mary Bartholomew to join him at Stan's residence. Mary visited Stan's home briefly before attending work that evening. As she left the house, Stan and Frazier walked Mary to her car. Frazier gave Mary a hug and tried to kiss her goodbye. Mary did not reciprocate. Mary, however, continued to contact Frazier through Snapchat while working. She agreed to meet Frazier and Stan, after completion of work, at Okanogan's Fire Hall, a firefighting museum with other activities available.

When Mary Bartholomew arrived at the Fire Hall, Stan Baker and Michael Frazier entered her 2004 Ford Focus. Frazier sat in the passenger seat, and Stan sat in the back. The trio chatted while Frazier and Stan waited for their friend Woody. When Woody arrived, Stan exited the car. Woody and Stan entered the Fire Hall to play pool, leaving Mary and Frazier alone in the car. Frazier asked Mary to drive to the Food Depot, a closed business, and park in the store's parking lot to talk. Mary complied.

Our analysis requires only a limited depiction of the conduct inside the car. Mary Bartholomew and Michael Frazier conversed for minutes, and then Frazier touched Mary. Mary immediately pushed Frazier's hand and declared "no" and "stop it, Michael." Report of Proceedings at 32-33. Frazier pinned Mary against the driver's door. Frazier did not stop, but repeatedly touched both Mary's breasts and private area. Frazier then

2

stood six feet, four inches and Mary reached five feet, three inches. Mary Bartholomew yelled, repeatedly told Michael Frazier to cease his conduct, attempted to push him, and kicked him. Mary cried. Frazier insisted that, no matter how often Mary repeated his name, he would not stop. Mary suffered bite marks on a breast and her neck. She also incurred a bruise on each thigh.

Eventually Michael Frazier got upset and ceased his behavior. Mary ordered him from her car. Frazier asked her to return him to the Fire Hall. At the Fire Hall, Frazier kissed Mary. She did not reciprocate. Frazier exited the car and entered the Fire Hall. Stan Baker asked Frazier what happened, and Frazier said nothing.

Mary Bartholomew drove home. When school started after the holiday break, Mary told a friend and her school counselor about the conduct of Michael Frazier on December 29. The friend confronted Frazier at school. Frazier replied that he felt bad about his behavior and admitted that Mary repeatedly told him to stop.

## PROCEDURE

The State of Washington charged Michael Frazier with indecent liberties by forcible compulsion. On cross-examination during trial, Frazier admitted that Mary Bartholomew said no three or four times. The trial court found the testimony of Mary Bartholomew to be credible compared to the testimony of Frazier. The trial court also found that Frazier acted "knowingly" with regard to his force applied to Mary. Clerk's Papers at 23. The trial court adjudicated Frazier guilty of indecent liberties by forcible

3

compulsion. The trial court sentenced Frazier to fifteen to thirty-six weeks in juvenile detention. Frazier must register as a sex offender. A restraining order precludes him from any contact with Mary for life.

## LAW AND ANALYSIS

Michael Frazier raises two arguments on appeal. First, because he was a juvenile at the time of the crime, the trial court should have applied the "reasonable child" standard to the mens rea requirement. Second, he was deprived of his right to a jury trial. We reject both arguments.

### Mens Rea

RCW 9A.44.100(1) defines the crime of indecent liberties by compulsion as:

> A person is guilty of indecent liberties when he or she *knowingly* causes another person to have sexual contact with him or her or another:
> (a) By forcible compulsion. . . .

(Emphasis added.) In turn, RCW 9A.44.010(6) defines "forcible compulsion" as

> "Forcible compulsion" means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped.

Note that RCW 9A.44.100(1) required the State to prove Michael Frazier "knowingly" caused another person to have sexual contact with him by forcible compulsion. Washington's criminal code defines "knowingly" as:

> . . . A person knows or acts knowingly or with knowledge when:

4

> (i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b). The first subsection describes actual knowledge. The second subsection portrays constructive knowledge. Both concepts are familiar to the law. Constructive knowledge asks: what would a reasonable person in the same situation know?

Michael Frazier argues that the trial court erred when failing to recognize his age and to consider his age when assessing his culpability. Frazier contends that the knowledge standard for him and other minors should be the "reasonable child" not "reasonable person" standard. The State interprets Frazier's argument as challenging his capacity to commit the crime.

We conclude sufficient evidence supports a finding that Frazier possessed actual knowledge. Since a reasonable child or reasonable person standard applies only for constructive knowledge, we need not and do not address whether the trial court should have applied a reasonable child standard. We also do not consider Frazier to argue he lacked capacity to commit a crime and thus do not address the State's argument.

Michael Frazier contends that courts consistently analyze knowledge from the perspective of a reasonable person. He cites two cases to support this contention: *State v. Stribling*, 164 Wn. App. 867, 267 P.3d 403 (2011) and *State v. Shipp*, 93 Wn.2d 510, 610

5

P.2d 1322 (1980). He maintains that his knowledge should be determined in light of a person his age. Nevertheless, neither of the two cases support his argument. Neither case stands for the proposition that the trier of fact considers the knowledge of a reasonable person when the accused has actual knowledge.

In *State v. Stribling*, this court acknowledged both methods of proving knowledge, but the decision required no analysis of the nature of knowledge. In *State v. Shipp*, the Washington Supreme Court evaluated constructive knowledge. The court declared:

> [T]he statute must be interpreted as only permitting, rather than directing, the jury to find that the defendant had knowledge if it finds that the ordinary person would have had knowledge under the circumstances. The jury must still be allowed to conclude that he was less attentive or intelligent than the ordinary person.

*Shipp*, 93 Wn.2d at 516. Of course, this passage assumes that the trier of fact decides guilt based on constructive knowledge, not actual knowledge.

Our trial court heard sufficient evidence to establish that Michael Frazier actually knew that he caused Mary Bartholomew to have sexual contact with him by overcoming her resistance. Therefore, we need not discuss Frazier's argument regarding the reasonable person standard for purposes of constructive knowledge.

Evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). Both direct and indirect evidence may support the jury's verdict. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). This court draws all reasonable inferences in favor

6

of the State. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). The trier of fact weighs the evidence and judges the credibility of witnesses. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

As the trial court found, Michael Frazier pinned Mary Bartholomew against a car door as she tried to escape. She yelled "no" and "stop" and pushed and kicked Frazier away. Frazier declared his intention not to stop. A seven-year-old, let alone a fifteen-year-old, knows the meaning of no. Frazier later told Mary's friend that he felt bad about what he did to Mary and that Mary repeatedly said no.

## Jury Trial

Michael Frazier next contends that the trial court's failure to provide him with a trial by jury violated his due process rights. He argues that the differences between the juvenile and adult systems have so eroded that the right to a jury trial for juveniles should be restored. The State responds that major differences still exist between the juvenile and adult systems such that the right to a jury trial is not constitutionally required. As the State mentions, all of Frazier's arguments have been made and rebuffed by either the Washington Supreme Court or the United States Supreme Court. Although we might agree with some of Frazier's observations, we must reject his argument. A higher court will need to overturn precedence.

Michael Frazier argues first that the Juvenile Justice Act of 1977, chapter 13.40 RCW, violates the Washington Constitution. Article I, section 21 of the Washington

7

Constitution reads "[t]he right of trial by jury shall remain involate[.]" In turn, RCW 13.04.021(2) reads: "[c]ases in the juvenile court shall be tried without a jury."

The Washington Supreme Court has held that a juvenile has no right to a jury trial. *Estes v. Hopp*, 73 Wn.2d 263, 438 P.2d 205 (1968); *State v. Lawley*, 91 Wn.2d 654, 591 P.2d 772 (1979); *State v. Schaaf*, 109 Wn.2d 1, 743 P.2d 240 (1987); *Monroe v. Soliz*, 132 Wn.2d 414, 939 P.2d 205 (1997); *State v. Chavez*, 163 Wn.2d 262, 180 P.3d 1250 (2008). *State v. Chavez* is the most recent case from the Washington Supreme Court that rejects many of the arguments advanced by Michael Frazier. The State charged Azel Chavez in juvenile court with attempted first degree murder, second degree unlawful possession of a firearm, first degree robbery, second degree assault, and second degree taking a motor vehicle without permission. The trial court found Chavez guilty following a bench trial.

On appeal, Azel Chavez argued that, for a juvenile, such as himself, charged with a serious offense, the balance struck between punitive and rehabilitative philosophies is identical to that struck for adult offenders. He claimed that, except for the length of his sentence and conditions of his confinement, the legal system treated him as an adult. He emphasized that the State fingerprinted, photographed, and forced him to provide a deoxyribonucleic acid sample. He noted that he could be transferred to adult prison to complete his disposition. He observed that his records cannot be sealed or destroyed, and, if he committed future crimes, the convictions would be calculated into his offender

8

score. After analyzing all of these arguments, the Supreme Court held that the juvenile justice system has not been so altered that juveniles charged with violent and serious violent offenses have the right to a jury trial.

In addressing Michael Frazier's constitutional argument, Washington courts consistently answer:

> [a] telling illustration of the fact that juvenile proceedings remain more lenient and more rehabilitative than adult criminal proceedings is the fact that none of the juveniles involved in this appeal availed themselves of the opportunity, pursuant to RCW 13.40.110, to request the juvenile court to decline jurisdiction and transfer the matter to the adult criminal system, where a jury trial would have been available.

*State v. J.H.*, 96 Wn. App. 167, 182-83, 978 P.2d 1121 (1999). Michael Frazier did not seek a declination.

Michael Frazier raises two additional contentions. First, he must register as a sex offender. Second, the State might involuntarily commit him as a sexually violent predator under chapter 71.09 RCW. Based on current law, we disagree that these factors require a jury trial.

This court ruled, in *State v. J.H.*, 96 Wn. App. at 182, that the adult sex offender registration statute does not constitute punishment, but rather is a regulatory measure. It follows that community notification requirements for juvenile offenders are likewise not punitive and do not affect a juvenile offender's right to a jury trial. The Washington

9

Supreme Court, in *State v. Chavez*, 163 Wn.2d 262 (2008) found the reasoning in *J.H.* convincing.

RCW 71.09.030(1) allows a sexually violent predator petition if: (a) a person has been convicted of a sexually violent felony, (b) a person has been committed for a sexually violent offense as a juvenile, (c) a person has been charged with a sexually violent offense and has been determined to be incompetent to stand trial, or (d) a person has been found not guilty by reason of insanity of a sexually violent offense. Michael Frazier's use of the sexually violent predator act fails for the same reason. The fact that juvenile convictions can count as points for calculating offender scores does not create a right to jury trial. Involuntary commitment for sexually violent predators requires a separate proceeding. Though the juvenile adjudication renders Michael Frazier subject to a sexually violent predator petition, the juvenile conviction does not mandate a petition nor does the filing of a petition automatically result in involuntary commitment.

Michael Frazier also relies on the United States Constitution's Sixth Amendment. The amendment declares, in pertinent part:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed.

Nevertheless, the United States Supreme Court has also held that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement. *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971).

10

No. 33568-2-III
*State v. Frazier*

## CONCLUSION

We affirm Michael Frazier's conviction for indecent liberties by forcible compulsion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

11